(No. 87-CC-3605)

GLOBAL FIRE PROTECTION CO., Claimant, v.
THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 23, 1994.*

GEORGE A. HESIK, for Claimant.

ROLAND W. BURRIS, Attorney General (PAUL ARVITES, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This matter came to be heard for trial on or about September 19, 1991. After hearing, both parties were afforded an opportunity to submit briefs, however, only the Claimant submitted a brief.

At trial, the evidence was for the most part not disputed and was received into evidence by way of stipulation. (See Defendant's Exhibit 1, which is attached to the trial transcript.) As stated in the stipulation, the construction project which is the subject of this action is what was known at the time as the State of Illinois Center and known as the James Thompson Center (hereinafter "the Center"). The Center was constructed for the use of the State of Illinois by the Capital Development Board (hereinafter "The CDB"). The CDB's project executive for the Center was Mr. Frank Conroy. The architect/engineer for the Center was Murphy-Knight. Murphy-Knight prepared the construction contract documents for the Center, and provided architecture/engineering services during the construction of the Center. Murphy-Knight's project manager was Mr. Ed Wilkas who is a licensed architect. Construction of the Center was let in several

bid packages. The work in controversy in this lawsuit was bid package number four (4) which was issued on February 1, 1983. On June 2, 1983, Claimant Global Fire Protection (hereinafter "Global") entered into a contract with the CDB, CDB contract number 83-070943, for the plumbing and fire protection work under bid package number four (4). (Defendant's Exhibit 2). The contract stated that Global was to complete its work 450 days from June 2, 1983, which would be August 25, 1984. Global received an authorization to proceed with its work on June 30, 1983, and Global timely completed its work. The contract further provided in pertinent part that if a contractor such as Global failed to diligently execute progress on the contract, the contractor and its surety were to be given three days written notice so that the contractor could remedy the problem. Specifically, section 3.05 of the conditions of the contract states:

"RIGHT TO CARRY OUT THE WORK If the Contractor neglects or fails to carry out the Work in accordance with the Contract or fails to perform any portion of the Contract, CDB may make good such deficiencies after giving three working days written notice to the Contractor and his surety. This shall be without prejudice to any other remedy CDB may have. CDB may deduct for the payments then or thereafter due the Contractor the cost of correcting such deficiencies, including, but not limited to, the cost of additional Architectural/Engineering and Construction Management Services made necessary by such neglect or failure. If the payments then or thereafter due the Contractor are not sufficient to cover such amount, the Contractor shall be liable in such amount to CDB."

In the course of performing its contractual duties, Global accidentally cored through conduit installed by another contractor, accidentally failed to seal around a riser as called for in the contract and cut holes in the drywall to install the fire protection sprinkler system, but did not patch the holes. As a result of the above contractual failures, the CDB issued three deductive change orders from the Global contract. These deductive change orders involved were numbers 27, 60 and 64. They amounted to

$743, $2,949 and $26,763 respectively. (Defendant's Exhibit 1.) The charges were the amounts paid to other companies to remedy the deficiencies in Global's work. (Defendant's exhibits 10, 11 and 12.) In regards to each of the deficiencies in Global's performance for which there were deductive change orders, neither Global or Global's surety was given three days notice by the CDB as required by the contract. The Respondent produced no evidence that Global or its surety were given any written notice of any deficiency in its performance of its contractual duties. In addition, Global was never notified of the deficiencies which were the subject of these deductive change orders. Global produced specific evidence that it attempted to prevent the deficiencies by, for example, seeking access panels for its sprinkler system.

The dispute in this case centers around whether the Respondent was permitted to make the deductive change orders and therefore, could lawfully deprive the Claimant of $30,455. Paragraph 3.05 of the contract clearly states that the CDB must give the contractor and his surety three days written notice before making good on the deficiency. The purpose of giving the contractor and his surety this short period to cure any defect is obvious. The Claimant contractor submitted evidence that he never received the written notice required by the contract. The Respondent submitted no evidence that it had given the required three days *written* notice which as the language of the contract clearly indicates is a condition precedent to the CDB taking remedial action.

Although given ample opportunity, the Respondent has offered no argument or explanation as to why the plain language of section 3.05 of the contract drafted by the Respondent and its agents should not control and permit Global to recover.

The plain language of section 3.05 of the contract required that the contractor be given three days written notice so that he could cure any deficiency with regard to his performance. No such notice was given and a condition precedent to the CDB's action was not met. The Claimant should be paid $30,455.

On October 1, 1993, an order was entered herein directing that certain details on the funding of the project be filed. That information was submitted May 11, 1994. In its response to the Court's order, the CDB stated that no funds lapsed on the project. The CDB apparently used the money deducted to pay for other aspects of the project. To actually enter an award under such circumstances would be tantamount to making a deficiency or supplemental appropriation. See *Graham, O'Shea & Hyde v. State* (1992), 44 Ill. Ct. Cl. 175, and line of cases cited therein.

The claim will have to be denied. However, in fulfillment of our responsibilities as an advisory body to the General Assembly and for purposes of possible further consideration of this matter by the General Assembly, if an appropriation is made, the Claimant should be paid $30,455.